NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0039n.06

No. 18-3372

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

ELIAS ANAISSIE,                          )
     Plaintiff-Appellant,                )
                                         )
v.                                       )
                                         )
                                         )
UNIVERSITY OF CINCINNATI PHYSICIANS,     )
INC.,                                    )
     Defendant-Appellee.                 )
                                         )

**FILED**
Jan 24, 2019
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE
SOUTHERN DISTRICT OF
OHIO

Before: BOGGS, KETHLEDGE, and NALBANDIAN, Circuit Judges.

KETHLEDGE, Circuit Judge. Elias Anaissie sued University of Cincinnati Physicians, Inc. ("Physicians"), alleging that it fired him because he complained about violations of the Americans with Disabilities Act. The district court granted summary judgment to Physicians. We affirm.

From 2012 to 2014, Anaissie repeatedly clashed with his colleagues at Physicians. In January 2014, the Chair for the Department of Internal Medicine, Gregory Rouan, along with several other executives, sent Anaissie a letter asking him to respect Physicians's "culture and hierarchy." A few weeks later, Anaissie told Rouan that one of the employees with whom he had clashed (a pharmacist) had tried to hire a hitman to kill him. (Neither party explains whether the pharmacist indeed plotted to murder Anaissie.) On March 4, Rouan—along with the Executive Director of Business Administration, Peter Clayton—told Anaissie that Physicians had hired an independent lawyer to investigate the alleged murder plot. They also told him that he was being

given two weeks of paid leave so that he could do two things: meet with the investigator, and undergo an evaluation for mental fitness. Anaissie responded that Physicians was violating the Americans with Disabilities Act (ADA) by asking him to submit to a mental evaluation.

Anaissie's first week of paid leave passed without him doing either of the assigned tasks. He declined to meet with the investigator because he first wanted to speak with his own lawyer, who was out of town all week. He also missed his appointment for a mental evaluation because, he said, he did not know where to go.

On March 10, Rouan and the Dean of the College of Medicine, Thomas Boat, sent Anaissie a letter saying that they expected him to give "prompt attention" to his assigned tasks. They further explained: "your paid current leave should facilitate your participation in the investigation and we expect your prompt participation." Anaissie underwent a mental evaluation the next day. But again he failed to schedule a meeting with the investigator. Clayton then sent Anaissie an email (which Anaissie says he never received) telling him that he should meet with the investigator within the next two days to avoid "further delay in [Anaissie's] return to work." The email also stated that, if Anaissie delayed further, Physicians would conclude that he was refusing to comply with its instructions. After Clayton sent that email, several executives considered firing Anaissie, but decided to give him more time to comply.

A few days later, Clayton sent another email to Anaissie, stating that Physicians was extending his leave because he still had not met with the investigator. Clayton wrote: "I point out to you once again that you are on a paid leave of absence during which we expect you to devote your time and attention to the evaluation . . . and the investigation[.]" Clayton went on: "we urge you to diligently attend to [these] matters so that further disruption to our operations and to you can be minimized." Two days later, Anaissie had not scheduled a meeting with the investigator,

so Clayton called Anaissie to ask about the delay. Anaissie answered that he had been unable to schedule a meeting because he had been car-shopping and spending time with his family, but hoped to meet with his attorney the next day. Anaissie also said that Physicians was violating several laws, including the ADA. Clayton told Rouan, Boat, and the company lawyer about his phone call with Anaissie. The next day, Rouan and Boat fired Anaissie for insubordination.

Anaissie thereafter sued Physicians, alleging (among other things) that Physicians fired him in retaliation for exercising his rights under the ADA. The district court granted summary judgment to Physicians on all claims. We review that decision de novo. *See Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014).

The ADA bars employers from retaliating against employees for complaining about violations of the Act. *See* 42 U.S.C. §12203(a). Anaissie says that Physicians broke this law when it fired him. But Physicians says that it fired Anaissie for a reason that was not retaliatory—namely, insubordination. Thus, Anaissie must present evidence from which a jury could find that Physicians's explanation is pretextual. *See E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 767 (6th Cir. 2015) (en banc).

Anaissie argues that Physicians has no basis in fact for saying that he was insubordinate, which is one way that a plaintiff can show pretext. *See Smith v. Chrysler Corp.*, 155 F.3d 799, 805–06 (6th Cir. 1998). He points out that Physicians did not initially give him a deadline for meeting with the investigator because it promised to extend his leave as long as the investigation required. He also notes that he made two phone calls to the investigator and eventually underwent a mental evaluation (after missing the first appointment). Anaissie contends that these facts show that he was not, in fact, insubordinate. But we ask only whether Physicians relied "on the particularized facts that were before it" when it fired Anaissie for insubordination, not whether the

company's belief was correct. *See id.* at 806–807. Physicians repeatedly told Anaissie to hurry up and meet the investigator, and Anaissie repeatedly delayed—including for one reason (car-shopping) that, under the circumstances, Physicians could quite reasonably regard as flippant. Hence Physicians had good reason to believe that he was insubordinate.

Anaissie also argues that three facts would allow a jury to find that Physicians fired him because he complained about violations of the ADA, and not because of any purported insubordination. First, he points to Clayton's comment that Anaissie had acted reasonably when he chose to speak with his own lawyer before meeting the investigator. But that comment does not show that Physicians was fine with Anaissie's delay. As the rest of Clayton's deposition and several emails make clear, Physicians found Anaissie's delay unreasonable to the point of distressing, even though Anaissie's initial decision to see a lawyer was reasonable. Second, Anaissie says that a jury could find pretext because Physicians fired him soon after he had complained about violations of the ADA. Yet temporal proximity does not, by itself, show pretext. *See Ford Motor Co.*, 782 F.3d at 767. Indeed, the more relevant proximity here is that between Anaissie's insubordination and his termination. Third, Anaissie asserts that Physicians gave him fewer warnings than it normally gave before firing an employee. That deviation, however, says almost nothing about the reason for his termination. *See White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 246 (6th Cir. 2005). In any event, Physicians repeatedly warned Anaissie that it expected him to meet with the investigator as soon as possible. On this record, therefore, no reasonable jury could find pretext.

Anaissie also suggests that Physicians fired him because he wanted to talk to his lawyer about the investigation of the putative murder plot. That argument fails for the reasons explained above. And that investigation had nothing to do with any alleged violation of the ADA, and thus

the ADA's bar on retaliation did not apply.  *See Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th

Cir. 2014).

      The district court's judgment is affirmed.